# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **RUTH REEVES,** individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**1ST CLASS REAL ESTATE LLC,** a Virginia limited liability company,<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Ruth Reeves ("Plaintiff" or "Reeves") brings this Class Action Complaint and Demand for Jury Trial against Defendant 1st Class Real Estate LLC ("Defendant" or "1st Class Real Estate") to stop the Defendant from violating the Telephone Consumer Protection Act by placing telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). Plaintiff Reeves, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Ruth Reeves is a resident of Humboldt, Tennessee.

2. Defendant 1st Class Real Estate is a Virginia limited liability company headquartered in Virginia Beach, Virginia. Defendant 1st Class Real Estate conducts business throughout this District, Tennessee, and the U.S.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant since the Defendant conducts business in this District and made telemarketing calls received by Plaintiff in this District.

5. The venue is proper under 28 U.S.C. § 1391(b) because the calls at issue were made into and received in this District.

## INTRODUCTION

6. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

8. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in April 2022 alone, at a rate of 131.4 million calls per day. www.robocallindex.com (last visited May 3, 2022).

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17. Defendant 1st Class Real Estate provides real estate services to consumers across the U.S.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3

18. Defendant 1st Class Real Estate partners with real estate agents across the U.S. and helps them increase their consumer outreach by offering consumer leads, and software products and/or services which enable their partner agents to place telemarketing cold calls *en masse*.

## HOW 1ST CLASS REAL ESTATE IS DISRUPTING THE REAL ESTATE INDUSTRY

1st Class has become one of the fastest-growing franchise models in the real estate industry by offering innovative service and support


**LEADS**
Would you be interested in a real estate franchise that provides you with leads and the tools to generate your own leads?


**TECHNOLOGY**
We supply you with all the technology you need to run your operation including a custom-built CRM and transaction management system


**BACKOFFICE SUPPORT**
Our 11,560 square foot Resource Center houses all essential staff, resources, and supplies your business needs [3]

19. Defendant 1st Class Real Estate provides leads, lead generation tools, and other tools to their partner agents to conduct telemarketing campaigns including cold calling consumers, to solicit Defendant's real estate services to the consumers.

20. Defendant 1st Class Real Estate benefits directly from the telemarketing campaigns conducted by their partner agents as they charge a fee on each transaction made by their partner agents, or for each converted lead as a result of the telemarketing campaign conducted using the Defendant's products or services. Defendant 1st Class Real Estate also charges the partner agents a fixed monthly fee for their marketing products or services.

---

[3] https://www.1stclassrealestate.com/what_we_offer



21.     Defendant 1st Class Real Estate ratifies their agents' lead generation practices, since they themselves provide the tools, technologies and technical training and support to their partner agents to generate the leads and to conduct the telemarketing campaigns.

22.     In cold calling the consumers, Defendant 1st Class Real Estate also causes multiple unsolicited telemarketing calls to be placed to phone numbers that are registered on the National DNC, such as the Plaintiff's phone number.

23.     Defendant 1st Class Real Estate provides intensive training to their agents on lead generation, cold calling, and conduction telemarketing campaigns to solicit their real estate services to the consumers. Defendant shares videos from their training sessions, illustrating in detail how Defendant promotes and enables their agents to place telemarketing calls, including the calls at issue. For instance:

- A training session conducted by Defendant's employee Matt Lange titled, *'Mastermind Lead Generation'* where he talks about lead generation and cold calling in detail:

---

[4] https://www.1stclassrealestate.com/no_cap

5



- Another video from the same training session by Defendant's employee Matt Lange, *'Mastermind Recap 6/1/21 – Lead Generation'*. [6]

- A video posted on Defendant's Facebook page, from a training session conducted by Defendant 1st Class Real Estate's co-owner Ryan: [7]



---

[5] https://www.youtube.com/watch?v=rvKnuJKheBs
[6] https://www.youtube.com/watch?v=JRFD-9vzpOA
[7] https://www.facebook.com/watch/?v=336683988308338

6

- A webpage from Defendant's website listing the various marketing training programs they offer: [8]



24. Defendant 1st Class Real Estate also hires employees to conduct telemarketing sales campaigns by placing cold calls to consumers. Defendant has posted multiple advertisements to hire telephone sales agents, for instance:

---

[8] https://www.facebook.com/watch/?v=336683988308338

7

> **1st Class Real Estate** is at **1st Class Real Estate**.
> 11 January 2018 · Virginia Beach, VA, United States
>
> Are you in Newport News and looking for a great company to work for? We are looking for a highly motivated, well-spoken person who has tremendous phone skills and has the ability to close deals with ease. You will be working a majority of your time on the computer and phone making cold calls, taking inbound real estate sales calls and making outbound lead calls. We need someone who is able to convert calls and leads into qualified appointments and closed deals for our agents. You will need to be exceptional at overcoming obstacles and changing a "No" into a "Yes!'"
>
> Salary + Bonus Structure with room for negotiation.
>
> If you are this person, and have the skill and know how to call a client into action, please contact us.
>
> Required experience:
> Direct Sales: 2 years
> Direct Phone Sales: 2 years
>
> Contact us at http://explodemycareer.com/contact/ or email your resume to HR@1stClassAgents.com TODAY!

- [9]

- A post by the Defendant to hire for the role of 'Real Estate Inside Sales Agent':

## Real Estate Inside Sales Agent

2540 Virginia Beach Blvd, Virginia Beach, VA 23452, USA
Full-time

**Company Description**

Changing Lives and Selling a Few Homes Along the Way…

Every day, our company will serve our sellers, buyers, and agents to have smooth, successful transactions and develop the career of our family of agents and support staff through hard work, integrity and defined processes that are the best in the industry.

**Job Description**

We are looking for a highly motivated, well-spoken person who has tremendous phone skills and has the ability to close deals with ease. You will be working a majority of your time on the computer and phone making cold calls, taking inbound real estate sales calls and making outbound lead calls. We need someone who is able to convert calls and leads into qualified appointments and closed deals for our agents. You will need to be exceptional at overcoming obstacles and changing a "No" into a "Yes!'"

[10]

---

[9] https://www.facebook.com/page/451405481594432/search/?q=cold%20call
[10] https://jobs.smartrecruiters.com/1stClassRealEstate1/743999668920846-real-estate-inside-sales-agent

**Responsibilities and Duties**

- Rigorously prospect for new business and follow up with leads in your pipeline on a daily basis from various lead sources to include but not limited to: Sign calls, Internet sources, FSBOs, Expired listings, Open Houses, Just listed/sold, Past clients, Website registrations, Listing inquiries, Center of influence, Facebook registrations, Direct-mail responses, Radio and TV ad responses
- Build rapport with sellers, listen, solve problems, overcome objections
- Manage leads and stay organized using our internal CRM, Follow Up Boss including adding leads, conversation notes, response times, and follow-up attempts into database
- Chase deals with fervor until they are either closed, dead or turned into qualified appointments
- Schedule appointments for Listing and Buyer Specialists
- Outbound calling, taking inbound calls, e-mail communication, cold calling, coordination and scheduling of real estate buying and selling opportunities and overall management of sales pipeline through the sales cycle.
- Accurately track and convey productivity and sales metrics to management.
- Follow and master scripts used in lead generation and cultivation to deliver the team value proposition and handle objections
- Qualify leads to accurately convey motivation, competition, and financial specifics to real estate agents. [11]

**Qualifications and Skills**

- Preferably a Licensed Real Estate Agent
- Communicates effectively with peers, superiors, customers, and vendors in written and verbal form
- Comfortable and productive spending 80-90% of their time on the phone
- Prior phone sales experience (direct selling experience) - Versed in situations where you needed to ask the consumer to take an action and buy something in order to get paid: car rentals, car sales, gym memberships, property and casualty insurance, financial planners, mortgage reps, door-to-door sales, and so forth
- Skilled at communicating your team's value
- Ability to block out distractions and listen intently to the conversation that is occurring
- Creates a sense of comfort and familiarity with their ability to build rapport
- Excellent organizational, follow up and time management skills
- Organized, systematic, and detail-oriented
- Results oriented and high achieve
- Basic understanding of computers and navigating the Internet
- Career development and training focused
- Is dynamic, articulate and well-spoken with a confident telephone voice
- Strong cold-calling and business development
- Learning and information absorption
- Selling and negotiation skills
- Practices, memorizes, and internalizes scripts
- Wants more for themselves than just a weekly salary
- Ability to set and close appointments over the phone
- Ability to use or quickly learn real estate specific CRM and marketing/lead technologies
- Be a team player who thrives working with a tight-knit company where their activities directly affect the bottom line [12]

---

[11] *Id.*
[12] *Id.*

-  [13]

25. In response to these unwanted calls, Plaintiff Reeves files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

### PLAINTIFF REEVES' ALLEGATIONS

26. Plaintiff Reeves registered her landline phone number on the DNC on September 16, 2008.

27. Plaintiff Reeves' phone number is not associated with a business and is for personal use.

28. In March 2022, Plaintiff Reeves began getting calls from the phone number 731-318-2363 to her landline phone soliciting Defendant 1st Class Real Estate's services to the Plaintiff.

29. On March 31, 2022, Plaintiff received a call from the phone number 731-318-2363 to her landline phone. Plaintiff answered the call and spoke to Defendant's employee who asked

---

[13] https://www.indeed.com/cmp/1st-Class-Real-Estate/jobs?start=0

10

if the Plaintiff was looking to move and sell her house. Plaintiff informed the Defendant's employee that she was not interested in selling her house.

30. On April 5, 2022, Plaintiff received another call from the Defendant's employee using the same phone number 731-318-2363. Plaintiff answered the call and spoke to the Defendant's employee who was soliciting Defendant 1st Class Real Estate's services to the Plaintiff. Plaintiff informed the Defendant's employee again that she was not interested in the Defendant's services.

31. The phone number 731-318-2363 belongs to Defendant's employee Caleb Houston, and is also advertised on Defendant's website as agent Houston's phone number:



[14]

32. The unwanted calls that Plaintiff received from Defendant 1st Class Real Estate, as alleged herein, have harmed Plaintiff Reeves in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of her phone.

33. Seeking redress for these injuries, Plaintiff Reeves, on behalf of herself and a Class of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47

---

[14] https://www.1stclassrealestate.com/agent-profile/caleb-houston-105495542

11

U.S.C. § 227, *et seq.*, which prohibits unsolicited calls to telephone numbers that are registered on the DNC.

## CLASS ALLEGATIONS

34.     Plaintiff Reeves brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time on their residential telephone number, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant, or their agent, called Plaintiff.

35.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Reeves anticipates the need to amend the Class definition following appropriate discovery.

36.     **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

37.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendant 1st Class Real Estate placed multiple calls to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to place those calls;

    (b)    whether the calls to Plaintiff and other consumers were made for telemarketing purposes;

    (c)    whether the calls constitute a violation of the TCPA; and

    (d)    whether members of the Class are entitled to treble damages based on the wilfulness of Defendant's conduct.

38.    **Adequate Representation**: Plaintiff Reeves will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Reeves has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff Reeves and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Reeves nor her counsel have any interest adverse to the Class.

39.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Reeves. Additionally, the damages suffered

13

by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Reeves and the Do Not Call Registry Class)**

40. Plaintiff Reeves repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference.

41. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

42. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

43. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

44. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

45. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

46. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Reeves, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Reeves as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Reeves requests a jury trial.

Respectfully Submitted,

15

**RUTH REEVES**, individually and on behalf of all those similarly situated individuals,

DATED this 11th day of May, 2022.

By: /s/ *Bradley G. Kirk*
Bradley G. Kirk
Attorney at Law
3000 Walnut Grove Road, Suite 200,
Memphis, TN 38111,
Telephone: 901-206-6163
Email: bgkirklaw@gmail.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*Pro Hac Vice Forthcoming